IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION

RENO FENELLI SIGGERS                                                                      PLAINTIFF

v.                                                                          No. 3:22CV243-JMV

CALVIN HAMP, ET AL.                                                                     DEFENDANTS

### MEMORANDUM OPINION

This matter comes before the court on Reno Fenelli Siggers' *pro se* prisoner complaint filed under 42 U.S.C. § 1983. For the purposes of the Prison Litigation Reform Act, the court notes that the plaintiff was incarcerated when he filed this suit. *See* 42 U.S.C. § 1997e. The plaintiff alleges that multiple defendants acted together to maliciously prosecute him as to charges of domestic violence, as well as the revocation of his parole. Specifically, he claims that various defendants arrested him, detained him, and prosecuted him without probable cause as to the charge that he choked his stepson on July 18, 2019. He also argues that his parole was revoked using an improper procedure. In addition, he alleges that his defense attorneys provided ineffective assistance of counsel during his criminal proceedings regarding the choking charge – for which his parole was revoked. Further, Siggers alleges that law enforcement officers selectively enforced the law by arresting him on charges of assaulting his son – but not arresting his wife when she had previously been accused of assaulting their daughter. Finally, Siggers alleges that his wife, son, and various law enforcement officers conspired to take his house from him.

The court issued an order [26] for the plaintiff to show cause why this case should not be dismissed for failure to state a claim upon which relief could be granted. The plaintiff timely responded [27] to the show cause order, and the matter is ripe for resolution. For the reasons set forth below, none of the plaintiff's allegations state a valid claim, and the instant case will be dismissed with prejudice for that reason.

**Relevant Factual Allegations**[1]

**Source of the Allegations**

The plaintiff first presented his claims in a 240-page complaint consisting of 70 pages of rambling narrative, commentary, and legal argument – followed by 170 pages of exhibits, which are neither organized nor rationally numbered.  Doc. 1.  In an effort to obtain a better organized pleading to review and analyze, the court ordered the plaintiff to file an amended complaint using the court's standard form for *pro se* prisoner cases proceeding under 42 U.S.C. § 1983.  The plaintiff filed such a complaint; however, his allegations are still contained in a lengthy addendum, which consists, again, of a meandering mixture of facts, commentary, and legal argument.  Doc. 8.  In addition, the plaintiff refers in his amended complaint to the 170 pages of jumbled exhibits from the original complaint.  As such, the court has drawn the facts from the plaintiff's allegations in his amended complaint, as well as from the exhibits, only, attached to the original complaint.  In addition, the plaintiff mentions various state court proceedings in his amended complaint, and the court has drawn facts from those proceedings, as well.[2]  The court will not consider any allegations contained in the body of the original complaint.

**Reno Siggers' Original Conviction**

Reno Fenelli Siggers was convicted for murder in April of 1995 and was sentenced to life imprisonment in the custody of the Mississippi Department of Corrections ("MDOC").  *See Siggers v. State*, 342 So.3d 1213, 1215 (Miss. Ct. App. 2022).  He was conditionally released on parole

---

[1] For the purposes of this order only, the court will take the plaintiff's allegations as true, except the allegations contradicted by either his exhibits or decisions of State courts.

[2] The court takes judicial notice of the record of the plaintiff's state court proceedings in the circuit court, the Mississippi Supreme Court, and the Mississippi Court of Appeals.  *See Moore v. Estelle*, 526 F.2d 690, 694 (5th Cir. 1976).  Examples of prior proceedings may be found in Doc. 1 at 212 (Denial of State Post-Conviction Collateral Relief as to charge of choking T.S.) and *Siggers v. State*, 342 So.3d 1213, 1215 (Miss. Ct. App. 2022) (setting forth a chronology as to Siggers' multiple challenges to different revocation proceedings).

from the murder conviction in October 2011. *Id.* He has also been reincarcerated for violating the terms of his parole – then released again – then reincarcerated – for violating the terms of his parole. *Id.* at 1215-16 (setting forth a partial list of parole violations). He has repeated this cycle multiple times since his original release on parole. *Id.* For a time, he violated the terms of his parole multiple times in rapid succession – a situation potentially obscuring the reason he was being held in custody at a given time, as a reviewing court could have considered any of several violations in deciding the revocation issue. *Id.* The Mississippi Court of Appeals has, however, set forth a chronology of these events, and this court has drawn some of the facts for the time period relevant to this case from that chronology. *Id.*

**Malicious Prosecution and Improper Parole Revocation Allegations**

The plaintiff alleges that numerous defendants acted together to prosecute him on charges of domestic violence against his minor stepson, T.S.[3] On July 18, 2019, T.S. misbehaved, and Siggers punished him by striking his palms and buttocks with a belt. Doc. 8 at 10. T.S. then approached a stranger walking down the street, borrowed the man's cell phone, and called 911. *Id.* at 11. Siggers took the phone from T.S., spoke to the 911 dispatcher, and told her not to send officers to the scene. *Id.* T.S. then ran to his neighbor's house and used their phone to call 911 again, this time affecting a girl's voice and alleging that Siggers had choked him. *Id.* at 12. A patrol car arrived within 5 or 10 minutes, responding to the calls, and investigated the incident. *Id.* T.S. admitted making the call because "he [Siggers] choked me." *Id.* at 13-14.

Siggers denied choking T.S., explaining that he had merely spanked him with a belt on the hands and buttocks. *Id.* at 14. When asked if it was true that he had not been choked, only spanked, T.S. responded "Yes." *Id.* The officer asked, "Why didn't you say this in your 911 call; you only said

---

[3] The court will refer to minor children by their initials or by their relationship to the plaintiff.

you was choked.  You don't see how this [the spanking-only story] all sounds rehearsed, like you was coerced into saying this?"  *Id*.

Siggers had returned to the house.  *Id*.  The officer knocked on the door, and asked to speak with T.S. and Siggers again – to look at T.S.'s neck.  *Id*.  The officer saw a scratch on the child's neck and took a photograph of it.  *Id*.  Siggers again returned to his house, and the officer conferred with someone back at headquarters.  *Id*. at 15.  The officer knocked again and, when Siggers answered, told him to get someone to watch the kids because the officer "got orders to detain [him]."  *Id*.

Siggers arranged for his wife to come home; meanwhile, he brought one of his daughters outside in an effort to support his statement that he had merely spanked T.S.  *Id*.  She did so, but the officer said, "I'm sorry, but I've been ordered by those above me to bring you in."  *Id*.  He then arrested Siggers.  *Id*.  Siggers was released on bond, and the next day, July 19, 2019, presented a recorded statement from his daughter to support his side of the story.  *Id*. at 16.  The matter was then set for initial appearance.  *Id*.

During the July 31, 2019, preliminary hearing on the July 18, 2019, domestic violence charge regarding the choking of T.S., a statement was presented:

> T.S. stated … [that] [Siggers] placed his hands around his neck and strangled him by lifting him in the air while his hands was around his neck.  T.S. stated that it felt like he was going to pass out ….

Doc. 8 at 19.[4]  Major Bernadette Logan (with the Tunica County Sheriff's Department) stated:

> T.S. had an injury that was consistent with being strangled.  He had an injury on the left side of his neck.

> …

---

[4] Siggers was no stranger to domestic violence charges.  At the time of the preliminary hearing, he had faced at least two *other* domestic violence charges:  (1) simple domestic violence arising out of a May 18, 2018, incident; and (2) another domestic violence charge arising out of a June 15, 2018, incident.  *Siggers v. State*, 342 So.3d 1213, 1215-1216 (Miss. Ct. App. 2022).  He was found guilty of the May 18 simple domestic violence charge.  *Id*.

Major Jones provided me with an audio recording they had with T.S. on the scene. *Id*. at 20.

Siggers alleges that, during the July 31 preliminary hearing, T.S. recanted his earlier statement, saying that he suffered the injury on his neck while playing with friends. *Id.* at 22. According to Siggers, his appointed attorney, Wilbert Johnson would not let him testify at the preliminary hearing.[5] *Id.* Judge Ryals considered the evidence, found probable cause that Siggers had choked T.S., and bound the case over to the Grand Jury. Doc. 1 at 150.

Further, the same day as the Preliminary Hearing (July 31, 2019), Siggers' parole officer issued an arrest warrant for violation of the terms of his parole – based on the choking incident from July 18, 2019. *See* Doc. 1 at 206 (July 31, 2019, Warrant for Arrest of Paroled Prisoner, citing Aggravated Assault as the offense meriting revocation).[6]

A separate incident occurring a few days after the hearing led to another arrest. On August 4, 2019, Siggers argued with Teressa Chauntay Bland (the mother of two of his other children) while driving her around in his truck. Doc. 8 at 38-39. When the argument became heated, Siggers told Bland that if she did not quiet down, she could get out of the truck and walk home. *Id.* at 39. He then stopped to talk to some friends, and, after more disagreement, Bland walked away. *Id.* However, as a result of this encounter, Bland filed kidnapping charges against him with the Tunica County Sheriff's Department. *Id.* at 39-40. Siggers drove to the Sheriff's Office to clear the matter up – and was detained, initially, on kidnapping charges. *Id.* He was *arrested* that day (August 4, 2019), on the charge of creating a public disturbance based on the incident with Ms. Bland – and *detained* with the

---

[5] Siggers (who attended the hearing) has not, however, explained how his counsel prevented him from letting the Justice Court Judge know he wished to testify.

[6] The July 31, 2019, parole violation warrant does not include the date of the aggravated assault incident; however, it appears that the aggravated assault charge arose out of the July 18, 2019, choking incident.

Tunica County Sheriff's Department based on the July 31, 2019, parole violation warrant (regarding the T.S. choking charge). *Id*. at 41; *see also Siggers v. State*, 342 So.3d at 1215-1216 (Miss. Ct. App. 2022).

Also, on or about August 13, 2019, the Mississippi Parole Board revoked Siggers' parole based on the July 18, 2019, choking incident.[7, 8] *See Siggers v. State*, 342 So.3d at 1215-1216 (Miss. Ct. App. 2022). Siggers had entered MDOC custody on August 12, 2019, and his preliminary revocation hearing took place on August 13, 2019, "within 30 days of the issuance of the warrant."[9] Ms. Jenkins (the Parole Board Preliminary Hearing Officer) found probable cause that Siggers had violated the terms of his release on parole. Doc. 8 at 42. In addition, the Parole Board set off considering Siggers' parole for a year. *Id*. According to Siggers, he did not have a final revocation hearing, and he was not present when the Parole Board set him off for a year. *Id.* He remained in MDOC custody based on the August 13, 2019, parole revocation until March 11, 2020, when his parole was reinstated. *See* MDOC Inmate Time Sheet; *see also* Doc. 1 at 215.

On November 13, 2019, Siggers' counsel, Azki Shah, mailed the prosecutor, Ms. Brenda Mitchell, affidavits tending to undermine the July 18, 2019, charge (choking T.S.) Doc. 1 at 115. On

---

[7] Siggers was out on bond on the T.S. choking charge from July 19, 2019, until August 4, 2019.

[8] The Mississippi Court of Appeals stated that in "August 2019, the Parole Board again revoked Siggers's parole for the June 15, 2018 incident *that resulted in an aggravated-domestic-violence charge*." *Siggers v. State*, 342 So.3d at 215-1216 (Miss. Ct. App. 2022) (emphasis added). It appears that the June 15, 2018, incident gave rise to only a simple domestic violence charge, rather than an aggravated domestic violence charge, as stated by the Court of Appeals. For that reason, Siggers believes that his August 13, 2019, revocation was based on his July 18, 2019, aggravated domestic violence charge for choking T.S. The court will assume Siggers is correct in this regard. In either case, the allegations fail to state a valid § 1983 claim.

[9] *See* MDOC Inmate Time Sheet, Doc. 1 at 215; *see also* Doc. 1 at 212 (Order Denying Motion for Post-Conviction Collateral Relief Under Mississippi Code § 99-39-5(1)(h) (as to the T.S. choking charge).

December 12, 2019, Tamara Calhoun, Siggers' wife, mailed the prosecutor a "Motion to Dismiss," with statements also tending to undermine the charge. Doc. 1 at 110.

The Grand Jury nonetheless indicted Siggers on the T.S. choking charge on February 3, 2020, and he was arraigned on that indictment on February 10, 2020. *See* Doc. 1 at 140 (February 3, 2020, Indictment); Doc. 8 at 33 (Amended Complaint). Prosecutor Brenda Mitchell listed as witnesses the plaintiff's wife (Tamara Calhoun), T.S., and Major Bernadette Logan – all of whom Siggers believed to be "his" witnesses. *Id.*; *see also* Doc. 1 at 140 (Indictment). Because the Grand Jury returned an indictment, Siggers believes that the three witnesses' testimony was contrary to the information contained in their affidavits and the "Motion to Dismiss." *Id.* In any event, despite the February 3, 2020, Indictment, as set forth above, Siggers' parole was reinstated a little over a month later on March 11, 2020. *See* MDOC Inmate Time Sheet, Doc. 1 at 215.

On January 14, 2022, Siggers, *pro se*, sought a writ of mandamus from the Mississippi Supreme Court requiring the Tunica County Circuit Court to dismiss Cause No. 2020-CV-0001 (the T.S. choking charge), and, on April 26, 2022, the Circuit Court dismissed that case *with prejudice*. Doc. 1 at 186. *See Siggers v. State of Mississippi*, 2022-M-00058 (Miss. 2022). The charge was ultimately dismissed because the victim, T.S., could not be located, and his mother did not wish to pursue the matter further. *See id.* (April 26, 2022, Order of Dismissal by the Tunica County Circuit Court.)

**Ineffective Assistance of Counsel Allegations**

The plaintiff alleges that two of his defense attorneys – Azki Shah (retained) and Wilbert Johnson (appointed) provided ineffective assistance regarding the charge that he choked his stepson. *See,* generally, Doc. 8 at 25-34. The plaintiff believes that attorneys Shah and Johnson should have done more to challenge the choking allegation on the merits to prevent the charge from being presented to the grand jury. *Id.* Specifically, the plaintiff argues that counsel should have presented

exculpatory evidence at the preliminary hearing – and ensured that the State presented the exculpatory evidence to the Grand Jury. *Id.* The plaintiff also believes that he was arrested and detained from July 31, 2019, to April 26, 2022, based on the charge that he choked his stepson – and that his detention was the result of the failure of his attorneys to properly defend that charge.[10] *Id.* In particular, the plaintiff alleges that attorney Johnson did not permit him to testify at his preliminary hearing to provide the court with exculpatory evidence. *Id*.

### The Ineffective Assistance Claims Fail on the Merits

The plaintiff's claims of ineffective assistance of counsel fail on the merits for multiple reasons: (1) Defense counsel, whether appointed or retained, is not a state actor and is thus not a proper defendant in an action proceeding under 42 U.S.C. § 1983[11]; (2) Contrary to Siggers' assertions, the Justice Court Judge indeed heard both inculpatory and exculpatory evidence at the preliminary hearing, including the T.S.'s statement recanting the initial allegations;[12] (3) In any event, the prosecution is not required to present exculpatory evidence to the Grand Jury; as such, counsel provided effective representation in deciding not to raise the issue;[13] and (4) The plaintiff, who attended the preliminary hearing, was free to inform the presiding Judge that he wished to testify, and,

---

[10] Siggers states in his amended complaint that he was incarcerated from July 31, 2019, through April 26, 2022; however, the MDOC timesheet he presented – and the opinion of the Mississippi Court of Appeals – reveal that he was released on parole for over a year during that period – from March 11, 2020, until March 25, 2021. *See Siggers v. State of Mississippi*, 342 So.3d 1213, 1215-16 (Miss. Ct. App. 2022); Doc. 1 at 215.

[11] *See Polk County v. Dodson*, 454 U.S. 312, 318-319 (1981); *Hudson v. Hughes*, 98 F.3d 868, 873 (5th Cir. 1996); *see also Toliver v. Braddy*, 2021 WL 1086176 (E.D. Tex. 2021) (court appointed investigator not subject to suit because members of plaintiff's criminal defense team, whether court-appointed or retained, are not state actors for purposes of 42 U.S.C. § 1983 liability.)

[12] *See* Doc. 8 at 23.

[13] *See United States v. Williams*, 504 U.S. 36, 55, 112 S. Ct. 1735, 1746, 118 L. Ed. 2d 352 (1992) (prosecutor has no duty to present exculpatory evidence to the Grand Jury).

had the Judge refused, the refusal would give rise to a claim for relief as to the *Judge's* decision (not as to defense counsel) in the state criminal case. In sum, the plaintiff's claims regarding ineffective assistance of counsel will be dismissed for want of substantive merit.

## Judge Ryals Is Cloaked With Judicial Immunity

Under the facts of the instant case, Justice Court Judge Ryals enjoys absolute immunity from suit, as all of the acts of which the plaintiff complains were judicial in nature. In *Sindram v. Suda*, 986 F.2d 1459 (D.C. Cir. 1993), Sindram, a very frequent filer in the Courts of the District of Columbia, sued in the United District Court seeking compensatory and punitive damages from two judges and several clerks of the D.C. Superior Court. In dismissing the complaint, the lower court relied on the doctrine of absolute judicial immunity. The Appellate Court affirmed the dismissal of Sindram's action, holding that these actions were well within the judges' judicial capacity and jurisdiction.

Courts must construe a judge's jurisdiction broadly where the issue is the immunity of the judge. *See Stump v. Sparkman*, 435 U.S. 349, 356 (1978); *Crooks v. Maynard*, 913 F.2d 699, 701 (9th Cir. 1990). In *Forrester v. White*, the Court held:

> If judges were personally liable for erroneous decisions, the resulting avalanche of suits, most of them frivolous but vexatious, would provide powerful incentives for judges to avoid rendering decisions likely to provoke such suits, *Id.*, at 660-661. The resulting timidity would be hard to detect or control, and it would manifestly detract from independent and impartial adjudication. Nor are suits against judges the only available means through which litigants can protect themselves from the consequences of judicial error. Most judicial mistakes or wrongs are open to correction through ordinary mechanisms of review, which are largely free of the harmful side-effects inevitably associated with exposing judges to personal liability.

*Forrester v. White*, 484 U.S. 219, 226-227 (1988).

As with other forms of immunity, judicial immunity is an immunity from suit, not merely from the ultimate assessment of damages. *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). Hence, judicial immunity is not overcome by allegations of bad faith or malice,

the existence of which cannot be resolved without discovery and, eventually trial. *See Pierson v. Ray*, 386 U.S., at 554 ("[I]mmunity applies even when the judge is accused of acting maliciously and corruptly"). Indeed, a litigant may overcome judicial immunity in only two circumstances: (1) A judge is not immune from liability for nonjudicial actions (actions not taken in the judge's judicial capacity, *Forrester v. White*, 484 U.S., at 227-229; and (2) A judge is not immune for actions, though judicial in nature, taken in the complete absence of all jurisdiction. *Stump* at 356-357; *Bradley v. Fisher*, 13 Wall., at 351. The relevant inquiry regarding whether an act is "judicial" is the nature and function of the act, rather than the act itself. *Stump*, 435 U.S., at 362. In other words, the court must look to whether the particular act is related to a general function normally performed by a judge. *Mireles v. Waco*, 502 U.S. 9, 12-13 (1991).

In this case, the plaintiff complains that Judge Ryals issued rulings that the plaintiff believes were not supported by the facts presented or the controlling law. *See, generally,* Doc. 8 at 19-25. However, issuing rulings is one of the primary functions of a judge – and certainly falls within the ambit of "judicial in nature." As such, the plaintiff's claims against Judge Ryals will be dismissed, as the Judge is cloaked with absolute judicial immunity.

### District Attorney Brenda Mitchell, Assistant District Attorney Terry Wallace, and Tunica County Prosecutor Chuck Grayes Are Cloaked With Prosecutorial Immunity

Each of the prosecutors in this matter will be dismissed with prejudice, as they have absolute immunity from civil damages under 42 U.S.C § 1983 when the acts alleged are performed in the course and scope of their duties as advocates. *See Imbler v. Pachtman*, 424 U.S. 409, 427 (1976); *Kalina v. Fletcher*, 522 U.S. 118, 126 (1997); *Spivey v. Robertson*, 197 F.3d 722, 726 (5th Cir. 2000). Traditional functions of an advocate are those functions which are intimately associated with the judicial phase of the criminal process, including, but not limited

to, whether to present a case to a grand jury, whether to file an information, whether and when to prosecute, whether to dismiss an indictment against a particular defendant, which witnesses to call, and what other evidence to present. *Imbler*, 42 U.S. at 430-431, n. 33.

A prosecutor is absolutely immune from any suit arising out of his duties as an advocate, regardless of the egregious nature of the allegations. *See Imbler, supra* (prosecutor absolutely immune from liability where he knowingly used perjured testimony, deliberately withheld exculpatory evidence, and failed to disclose all facts casting doubt upon state's testimony); *Esteves v. Brock*, 106 F.3d 674 (5th Cir. 1997)(prosecutor absolutely immune from claims of using peremptory challenges in racially discriminatory manner); *Brandley v. Keeshan*, 64 F.3d 196 (5th Cir. 1995)(prosecutor absolutely immune from claim of witness intimidation and suppression of evidence, even if prosecutor knew of and directed witness intimidation and suppression of evidence); *Boyd v. Biggers*, 31 F.3d 279, 285 (5th Cir. 1994)(prosecutor immune from suit alleging knowing use of perjured testimony, malicious prosecution, and conspiring with the judge to predetermine the outcome of a judicial proceeding).

Such immunity is necessary; otherwise

[t]he public trust of the prosecutor's office would suffer if he were constrained in making every decision by the consequences in terms of his own potential liability in a suit for damages. Such suits could be expected with some frequency, for a defendant often will transform his resentment at being prosecuted into the ascription of improper and malicious actions to the State's advocate. Further, if the prosecutor could be made to answer in court each time such a person charged him with wrongdoing, his energy and attention would be diverted from the pressing duty of enforcing the criminal law.

*Imbler*, 424 U.S. at 425 (citations omitted). The prosecutor defendants were acting in the course and scope of their duties and are thus absolutely immune from suit. As such, the allegations against them will be dismissed under 28 U.S.C. § 1915(e)(2)(B) for failure to state a valid § 1983 claim. *Neitzke v. Williams*, 490 U.S. 319, 327 (1989); *Allison v. Kyle*, 66 F.3d 71, 73 (5th Cir. 1995).

- 11 -

**False Arrest and Imprisonment Claims Fail on the Merits**

The plaintiff alleges that several of the law enforcement defendants with the Tunica County Sheriff's Office ("T.C.S.O.") violated his rights by arresting and detaining him without probable cause.[14]  Specifically, he alleges that the following defendants did not establish probable cause to arrest and detain him for purportedly choking his stepson:  Sheriff Calvin Hamp, Jammie Lewis (Deputy Sheriff), Bernadette Logan (Major, T.C.S.O.), Michael Smith (Officer, T.C.S.O.), Ms. Persunda Jones (Deputy Sheriff, T.C.S.O.), Markendricka Keys (Lt./Det., T.C.S.O.), and Badge No. DW6085 (Officer, T.C.S.O.)

Probable cause to arrest exists when, at the time of arrest, the facts and circumstances within the knowledge of the arresting officer are sufficient to cause a police officer of reasonable caution to believe an offense has been or is being committed.[15]  *See Duckett v. Cedar Park,* 950 F.2d 272, 278 (5th Cir. 1992) (citing *Eugene v. Alief Indep. Sch. Dist.*, 65 F.3d 1299, 1305 (5th Cir. 1995)).  The probable cause requirement does not require any showing that such a belief is correct or more likely true than false.  *Baker v. McCollan*, 443 U.S. 137, 144, 99 S. Ct. 2689, 61 L. Ed. 2d 433 (1979).  A sheriff executing an arrest warrant is not required by the Constitution to independently investigate every claim of innocence.  *Id.*  "The Constitution does not guarantee that only the guilty will be arrested.  If it did, § 1983 would provide a cause of action for every defendant acquitted – indeed, for every suspect released."  *Baker*, 443 U.S. at 145.  A person arrested

---

[14] Under Mississippi law, the elements of false arrest or imprisonment are:  (1) the detention of a person; and (2) the unlawfulness of the detention.  *Powell v. Moore,* 174 So.2d 352, 354 (Miss.1965)); *see also Delaney v. Mississippi Dep't of Pub. Safety*, No. 3:12CV229TSL-MTP, 2013 WL 286365, at *5 (S.D. Miss. Jan. 24, 2013), *aff'd*, 554 F. App'x 279 (5th Cir. 2014).  The plaintiff's allegation is that his arrest and detention were "unlawful" because they were not supported by probable cause.

[15] Whether a court is determining probable cause to issue a warrant prior to arrest – or deciding whether probable cause exists to hold a defendant after a warrantless arrest – the standard is the same.  *Baker v. McCollan*, 443 U.S. 137, 143, 99 S. Ct. 2689, 61 L. Ed. 2d 433 (1979).

pursuant to a warrant issued by a magistrate on a showing of probable cause is not entitled to a separate judicial determination that probable cause exists to detain him prior to trial. *Id.* at 144.

In this case, law enforcement officers arrested Siggers on July 18, 2019, based upon the following evidence:

(1) Siggers' stepson called 911 twice that day, alleging that Siggers had choked him[16];

(2) Siggers' stepson had a visible mark on his neck consistent with choking[17]; and

(3) Siggers had a history of multiple domestic abuse complaints with the Tunica County Sheriff's Department – and had recently been convicted on one of the domestic abuse charges on February 13, 2019.[18]

This information was enough to provide knowledge to the arresting officer sufficient to cause a police officer of reasonable caution to believe an offense has been or is being committed – namely, that Siggers had choked his stepson. *See Duckett, supra.*

Siggers devotes much of his complaint to listing the evidence he believes to be exculpatory – and complaining that the arresting officers, and, later, the Justice Court Judge and Grand Jury, did not give that evidence sufficient weight. *See, generally* Doc. 8 at 19-37. However, arresting officers are not required by the Constitution to independently investigate every claim of innocence. *See Baker, supra.*

Similarly, the Justice Court Judge at the July 31, 2019, Preliminary Hearing had the discretion to weigh the evidence, consider that which he deemed credible, and determine whether probable cause existed to bind the case over to the Grand Jury:

The purpose of the preliminary hearing is to ensure that there is probable cause to

---

[16] *See* Doc. 8 at 11-12.

[17] *See* Doc. 8 at 14 ("mark [that] 'appeared' to be a scratch on [T.S.'s] neck"; *see also* Doc. 1 at 141 (photographs of T.S.'s "neck area" revealed "an injury that was consistent with being strangled.")

[18] *See Siggers v. State*, 342 So.3d 1213, 1215-1216 (Miss. Ct. App. 2022).

believe that a crime has been committed and that the defendant committed it.  It is a screening procedure, designed to provide an early judicial check on whether the prosecutor has sufficient evidence to move the case forward.  If the magistrate judge finds that probable cause exists, the case is bound over to the next stage of the process.  If no probable cause exists, the defendant is discharged and the case is dismissed, although the government may refile the charges.

§ 92 In General, 1 Fed. Prac. & Proc. Crim. § 92 (5th ed.)  However, "a preliminary hearing is not a minitrial on the issue of guilt, rather, its function is the more limited one of determining whether probable cause exists to hold the accused for trial."  *United States v. Rathbun*, 2020 WL 2104790, at *1 (D. Mass. 2020) (internal quotation marks and citations omitted).

In the present case, the Justice Court Judge found:

> [Siggers' stepson] stated … [Siggers] placed his hands around his neck and strangled him by lifting him in the air while his hands [were] around his neck.  [The stepson] stated it felt like he was going to pass out ….

Doc. 8 at 19.  Captain Bernadette Logan's Supplement (drafted after the Preliminary Hearing, but containing information presented at the hearing) added:

> [The stepson] had an injury that was consistent with being strangled.  He had an injury on the left side of his neck….  Major Jones provided me with an audio recording they had with [the stepson] on the scene.

Doc. 1 at 141.  This evidence easily establishes probable cause to support the charge that Reno Siggers strangled his stepson, T.S. – and to support the decision to bind the case over to the Grand Jury.

Siggers was then detained just after the preliminary hearing based on that charge.  *See Siggers v. State*, 342 So.3d 1213, 1215-1216 (Miss. Ct. App. 2022).[19]  Eventually, on February 3, 2020, a Grand Jury indicted Siggers on the charge of strangling his stepson (which, once again, established probable cause), and he was arraigned on that charge on February 18, 2020.  Doc. 1

---

[19] As set forth previously, Siggers believes that his detention after the August 3, 2019, preliminary hearing was based on the July 18, 2019, aggravated domestic violence charge.  The court will assume, without deciding, that Siggers is correct.  Again, the basis for his post-hearing detention does not affect the court's decision on the matter.

at 140 (Indictment); Doc. 1 at 180 (Writ of *Habeas Corpus Ad Prosequendum* for February 18, 2020, arraignment). The indictment, like the warrant, is prima facie evidence that probable cause existed to detain Siggers on the T.S. choking charge (evidence that can be rebutted by facts showing "fraud or other improprieties in [Siggers'] prosecution.") *Gatheright v. Clark*, 680 Fed. Appx. 297, 301 (5th Cir. 2017).

Siggers has not alleged facts to show fraud or other improprieties in the Grand Jury proceedings – other than T.S.'s statement recanting his earlier statement – and Siggers' conjecture regarding testimony of the Grand Jury witnesses. Siggers argues that the later statement by T.S. recanting the choking allegation voids the choking charge altogether.

As an initial matter, mere conjecture does not constitute evidence; as such, Siggers' belief regarding the content of various Grand Jury witnesses' testimony is irrelevant. In addition, statements recanting earlier statements "do not explain away the government's evidence, rather they tend to contradict or challenge the credibility" of the prior statements. *Eain v. Wilkes*, 641 F.2d 504, 511-12 (7th Cir. 1981). The Justice Court Judge – or the Grand Jury – may weigh any evidence regarding whether the original statement had been coerced – and subsequently recanted – and conclude that the original statements were nonetheless more credible and sufficient to establish probable cause. *Id.*; *see also De La Rosa Pena v. Daniels*, No. 1:13CV708, 2015 WL 13730935, at *7 (E.D. Tex. Dec. 11, 2015), *report and recommendation adopted sub nom. Pena v. Daniels*, No. 1:13CV708, 2016 WL 463251 (E.D. Tex. Feb. 8, 2016). Siggers has not overcome the prima facie evidence that the arrest warrant and Indictment established probable cause. For these reasons, probable cause existed to arrest and detain the plaintiff – and his claims regarding false arrest and imprisonment will be dismissed with prejudice.

Further, as the plaintiff's allegations against the following defendants arise solely from his claims of lack of probable cause, they will be dismissed, with prejudice, from this case:

Sheriff Calvin Hamp, Jammie Lewis (Deputy Sheriff), Bernadette Logan (Major, T.C.S.O.), Michael Smith (Officer, T.C.S.O.), Ms. Persundra Jones (Deputy Sheriff, T.C.S.O.), Markendricka Keys (Lt./Det., T.C.S.O.), and Badge No. DW6085 (Officer, T.C.S.O.).

### The Plaintiff's Allegations Regarding Revocation of Parole
### Fail to State a Valid Claim for Relief

The plaintiff alleges that the following members of the Mississippi Parole Board, as well as the Parole Board's Hearing Officer, found that he violated the conditions of his parole in the absence of sufficient evidence to support that finding: Parole Board members (Ms. Betty Lou, Nehemiah Flowers, Ms. Kathy Henry, William "Butch" Townsend, Janise Wortham, and Steven Pickett), as well as Parole Board Preliminary Hearing Officer Ms. Jenkins. This claim must be dismissed for three reasons: (1) The granting or denial of parole lies within the sole discretion of the Parole Board; (2) Siggers' claim regarding parole revocation is barred by the Supreme Court's holding in *Heck v. Humphrey*, 512 U.S. 477 (1994); and (3) Revocation may be based solely on a parolee's arrest; a conviction is not necessary.

### Claims Regarding Actions of the Parole Board

The plaintiff's § 1983 claims based upon the violation of state law will be dismissed for failure to state a claim upon which relief could be granted; violation of state law does not, alone, give rise to a cause of action under § 1983. *Williams v. Treen*, 671 F.2d 892, 900 (5th Cir. 1982). The Due Process Clause provides protection only from those state procedures which imperil a protected liberty or property interest. *Olim v. Wakinekona*, 461 U.S. 238, 250-51, 103 S. Ct. 1741, 1748, 75 L. Ed. 2d 813 (1983). Thus, unless the Mississippi statutes governing parole afford prisoners a liberty or property interest, those prisoners cannot mount a procedural or substantive due process challenge to the actions of the parole board. *Allison v. Kyle*, 66 F.3d 71 (5th Cir. 1995). Mississippi parole statutes do *not*, however, bestow a liberty or property interest to prisoners; hence, Mississippi prisoners cannot challenge the decisions of the parole board on due process grounds. *Irving v. Thigpen*, 732 F.2d 1215,

1218 (5th Cir. 1984). As such, the plaintiff's due process claims will be dismissed for failure to state a claim upon which relief could be granted.

In addition, to the extent that the plaintiff alleges a violation of his right to equal protection of the law, that claim likewise fails, as the plaintiff has not identified "two or more relevant persons or groups" which the government has classified and treated differently, to the plaintiff's detriment. *See Vera v. Tue*, 73 F.3d 604, 609-10 (5th Cir. 1996). Thus, this allegation will be dismissed for failure to state a claim upon which relief could be granted.

In response to the court's show cause order, Siggers argues that law enforcement officers violated his right to equal protection of the laws because they arrested him on suspicion of domestic violence against his son, but did not arrest his wife under similar circumstances. Doc. 27. Siggers states that these allegations set forth a "class of one" equal protection claim; however, his allegations are more properly characterized as a claim of selective enforcement of the law. *Bryan v. City of Madison, Mississippi,* 213 F.3d 267, 277 (5th Cir. 2000); *Allred's Produce v. U.S. Dep't of Agric.,* 178 F.3d 743, 748 (5th Cir. 1999). The mere "conscious exercise of some selectivity in enforcement is not in itself a federal constitutional violation." *See Allred's Produce,* 178 F.3d at 748 (citing *Oyler v. Boles,* 368 U.S. 448, 456, 82 S.Ct. 501, 7 L.Ed.2d 446 (1962)). To prevail on a selective prosecution or enforcement claim, "a plaintiff must prove that the government official's acts were motivated by improper considerations, such as race, religion, or the desire to prevent the exercise of a constitutional right." *Bryan,* 213 F.3d at 277. Siggers must show "that the selective enforcement 'was deliberately based upon an unjustifiable standard such as race, religion, or other arbitrary classification.'" *Allred's Produce,* 178 F.3d at 748 (citing *Oyler,* 368 U.S. at 456, 82 S.Ct. 501). He has made no such allegation in the present case; nor has he provided documentation to support his claim. As such, this allegation must be dismissed with prejudice for failure to state a claim upon which relief could be granted.

In sum, all of the plaintiff's claims against members of the Parole Board (as well as his selective enforcement claims against law enforcement officers) will be dismissed with prejudice for failure to state a claim upon which relief could be granted under 28 U.S.C. § 1915 (e)(2)(B)(ii).

### Heck v. Humphrey

As the plaintiff's claims against the Parole Board were denied during his pursuit of state post-conviction collateral relief, these claims are barred under *Heck v. Humphrey*, 512 U.S. 477 (1994). *See Siggers v. State*, 342 So.3d 1213, 1215 (Miss. Ct. App. 2022) (plaintiff's claims regarding actions of Parole Board were denied on post-conviction collateral review). In *Heck*, the Supreme Court clarified the relationship between actions under 42 U.S.C. § 1983 and *habeas corpus* proceedings. Under *Heck*, a § 1983 damage claim that calls into question the lawfulness of conviction or confinement or otherwise demonstrates the invalidity of the conviction or confinement is not cognizable until such time as the plaintiff is able to

> prove that the conviction or sentence has been *reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus*, 28 U.S.C. § 2254. A claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under § 1983.

*Heck v. Humphrey*, 114 S. Ct. at 2372 (emphasis added); *see also Boyd v. Biggers*, 31 F.3d 279, 283 (5th Cir. 1994). Only if the court finds that the plaintiff's § 1983 suit, even if successful, "will not demonstrate the invalidity of any outstanding criminal judgment against the plaintiff," should the § 1983 action be allowed to proceed. *See Mackey v. Dickson*, 47 F.3d 744, 746 (5th Cir. 1995).

In the present case, during the plaintiff's pursuit of state post-conviction collateral relief as to the 2019 revocation, the state courts decided against him on the merits regarding his allegations against the Parole Board that they erroneously found that he had violated the terms of his parole. *See Siggers v. State*, 342 So.3d 1213, 1216 (Miss. Ct. App. 2022). Thus, the

- 18 -

plaintiff's success in his claim for damages against the Parole Board defendants (for improperly revoking his parole) would necessarily draw into question the validity of that parole revocation. Therefore, the plaintiff must "demonstrate that the [parole revocation] has already been invalidated," *Heck*, 114 S. Ct. at 2372, in order for the § 1983 cause of action to accrue. *See McGrew v. Tex. Bd. of Pardons & Paroles,* 47 F.3d 158, 161 (5th Cir. 1995) (holding that *Heck* applies to parole and revocation proceedings). Though the plaintiff was later granted parole (in March of 2020), the 2019 revocation of his parole has never been invalidated. *See Siggers*, 342 So.3d at 1216 (Miss. Ct. App. 2022). As such, this allegation will be dismissed for failure to state a claim upon which relief could be granted under 28 U.S.C. § 1915(d). *Neitzke v. Williams*, 490 U.S. 319, 326 (1989).

Further, as the plaintiff's claims against the following defendants arise solely from the decision to revoke his parole, they will be dismissed with prejudice from this case: Parole Board members (Ms. Betty Lou, Nehemiah Flowers, Ms. Kathy Henry, William "Butch" Townsend, Janise Wortham, and Steven Pickett), as well as Parole Board Preliminary Hearing Officer Ms. Jenkins.

### An Arrest for a New Crime Is Sufficient
### to Support Revocation of Parole

Siggers seems to argue throughout his pleadings and response to the court's Show Cause Order that his revocation for acquiring new criminal charges (choking T.S.) was unlawful because he was not, ultimately, convicted for that crime. However, parole revocation for new criminal charges is permissible, even without a conviction:

> To lawfully revoke parole, the government is not required to have an arrest, a charge, and ultimately a conviction for a new criminal offense. Instead, the Commission may consider evidence of dismissed state charges and charges that were subsequently overturned, as long as the acquittal or dismissal did not, as a matter of law, remove all factual support from the parole revocation.

*Fillingham v. United States*, 867 F.3d 531, 537–38 (5th Cir. 2017), cert. den., 138 S. Ct. 1035

(U.S. 2018) (citing *Else v. Johnson*, 104 F.3d 82, 83 (5th Cir. 1997)); *see also Osborne v. United States District Court, Southern District of Mississippi, Biloxi, MS*, 132 F.3d 1456, 1456 (5th Cir. 1997) ("Conviction of a criminal charge is not a constitutional prerequisite to the revocation of parole.") (citing *Amaya v. Beto*, 424 F.2d 363, 364 (5th Cir. 1970)); *Else*, 104 F.3d at 83; *Crawford v. Barry*, 1996 WL 734096, at *1 (D.C. Cir. 1996) ("[I]t was proper for the Board to consider the charge of which appellant was acquitted."); *Seymore v. Beto*, 383 F.2d 384 (5th Cir. 1967) (upholding a probation revocation based on a charge that was subsequently dismissed for insufficient evidence on motion of the state); *see also Whitehead v. United States Parole Commission*, 755 F.2d 1536, 1537 (11th Cir. 1985) ("[E]ven if there had been an acquittal on the criminal charge, the conduct can be the basis of the parole revocation.... [T]he Commission need only determine that a preponderance of the evidence supports the parole violation...."); *Mullen v. United States Parole Commission*, 756 F.2d 74, 75 (8th Cir. 1985) (holding dismissal of criminal charges for "lack of prosecutorial merit" did not bar independent fact-finding by the Commission).

In this case, Siggers' charges arising out of the T.S. choking allegations were ultimately dismissed because the victim could not be located. *See Siggers v. State of Mississippi*, 2022-M-00058 (Miss. 2022) (April 26, 2022, Order of Dismissal by the Tunica County Circuit Court.) This was certainly not a situation where, "as a matter of law … [the dismissal] remove[d] all factual support from the parole revocation;" thus, the dismissal of the choking charge did not invalidate the Commission's decision to revoke Siggers' parole. *See Fillingham, supra*. For these reasons, this allegation will be dismissed with prejudice for failure to state a claim upon which relief could be granted.

**Siggers' Allegations Regarding "Conspiracy"**

- 20 -

In his response to the court's show cause order, Siggers states that the court failed to address his claim of "conspiracy," as set forth in his amended complaint. See Doc. 8, p. 36. In Mississippi, a conspiracy is "a combination of persons to accomplish an unlawful purpose or a lawful purpose unlawfully." *S. Christian Leadership Conf., Inc. v. A. G. Corp.*, 241 So. 2d 619, 623 (Miss. 1970) (*citing* 15 C.J.S. Conspiracy, Sec. 1, page 996; Secs. 8 and 10 at 1003, 1006-7). However, "it is not a fraud or unlawful to do what one has a legal right to do." *State v. Wilde (Wilbe) Lumber Co.*, 217 Miss. 346, 64 So.2d 327.

Though not set out in a separate discussion, Siggers alleges that his wife, his son, and various law enforcement officers engaged in a "conspiracy" to take his home from him. Doc. 8 at 36. He states that he found a note from his stepson stating that his son cannot live in the same house with him. *Id.* He also alleges that his wife and defendant Hamp were in a "romantic relationship." *Id.* at 37.

First, Siggers' wife and son are not state actors; as such, they are not proper defendants in an action proceeding under 42 U.S.C. § 1983.[20] In addition, the fact that T.S. did not wish to live in the same house as Siggers fails to support his allegation that T.S. wished to take Siggers' home. Further, he has not alleged facts to show that the defendants acted together to deprive him of his home. Finally, in the absence of specific facts to support his allegations, Siggers has only his bare assertions to support this claim, and such conclusory statements are insufficient to support an action under 42 U.S.C. § 1983. *See Young v. Biggers*, 938 F.2d 565, 569 (5th Cir. 1991); *see also Ross v. Estelle*, 694 F.2d 1008, 1012 (5th Cir. 1983). As such, Siggers' allegation

---

[20] Relief under 42 U.S.C. § 1983 is only available to preserve a plaintiff's federal constitutional or statutory rights against a defendant acting *under color of state law*. *See* 42 U.S.C. § 1983. Thus, a § 1983 plaintiff may only pursue his civil rights claims against someone who is a state actor.

of "conspiracy" will be dismissed with prejudice for failure to state a claim upon which relief could be granted.

### Conclusion

In sum, none of the plaintiff's allegations state a valid claim under 42 U.S.C. § 1983. As such, the instant case will be dismissed with prejudice for failure to state a claim upon which relief could be granted. A final judgment consistent with this memorandum opinion will issue today.

**SO ORDERED**, this, the 28th day of October, 2024.

/s/   Jane M. Virden
UNITED STATES MAGISTRATE JUDGE